# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| DOMINIQUE ALEXANDER, CARVELL BOWENS, CYRUS CEZAR, DAMON CRENSHAW, DAJAI FIELDS, CYNTHIA FLORES, TRACY FOSTER, JASMIN GALVAN, DEBBIE KIM, ALEXIS MCKINNEY, LAPREA PIERCE, AMY SMITH, LAKEISHA SMITH, NATHAN TINDALL, ELISEO VALDEZ, COURTNEY WADLOW, CNAYA WARREN, SARAH SHIRLEY, JOSEPH ADAMS, KRISTA ADAMS, and JANE AND JOHN DOE BRIDGE PLAINTIFFS 1-10 | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 3:22-CV-1193-S |
| v. | § § | |
| CITY OF DALLAS, TEXAS, JOHN AND JANE ROE DALLAS POLICE OFFICERS 1-10, DALLAS COUNTY, TEXAS, and JOHN AND JANE SMITH SHERIFF'S DEPUTIES 1-10 | § § § § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Dallas County's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims Alleged Against It in Plaintiffs' Amended Complaint ("County Motion") [ECF No. 30] and Defendant City of Dallas's Motion to Dismiss Plaintiffs' Second Amended Complaint ("City Motion") [ECF No. 33]. The Court has reviewed the Motions, Plaintiffs' Response to the County Motion ("County Response") [ECF No. 40], Plaintiffs' Response to the City Motion ("City Response") [ECF No. 43], Defendant Dallas County's Reply in Support of the County Motion [ECF No. 41], Defendant City of Dallas's Reply in Support of the City Motion [ECF No. 44], and the applicable law. For the following reasons, the Court **GRANTS** the Motions.

## I. BACKGROUND

This lawsuit arises out of protests in Dallas, Texas, in the aftermath of George Floyd's death. Pls.' Second Am. Compl. ("Second Amended Complaint")[1] [ECF No. 28] ¶¶ 1, 47. Plaintiffs are individuals who participated in the protests and allege they were "unlawfully detained on [the] Margaret Hunt [Hill] Bridge in violation of their constitutional rights" and "harmed when [members of law enforcement] fired tear gas canisters at them, shot them with rubber bullet [kinetic impact projectiles ("KIPs")], and seized and restrained them for hours . . . ."[2] *Id.* ¶ 2.

The protests in Dallas began on May 29, 2020. *Id.* ¶ 54. Three days later, on June 1, 2020, Plaintiffs "gathered for a peaceful protest in front of Lew Sterrett Justice Center to exercise their First Amendment rights." *Id.* ¶ 63. Plaintiffs then began marching with other protesters. *Id.* ¶ 64. When the protesters reached the intersection with the road leading to the Margaret Hunt Hill Bridge, the Dallas Police Department allegedly "positioned themselves and had stopped traffic so that protesters would enter the westbound ramp onto the [b]ridge." *Id.* ¶ 65. Plaintiffs proceeded onto the bridge. *Id.* According to Plaintiffs, no one warned them not to go onto the bridge or told them they would be arrested or detained if they did so. *Id.* Plaintiffs refer to this tactic as "kettling," which they describe as "an increasingly violent technique . . . wherein police officers block off streets and push or 'corral' a group of protesters into a small area, like a bridge . . ., to restrict their movement." *Id.* ¶ 50.

---

[1] Plaintiffs titled their live pleading "Original Complaint." However, Plaintiffs have already amended their Complaint twice. *See* ECF Nos. 3, 28. Therefore, the Court refers to Plaintiffs' live pleading as their Second Amended Complaint.

[2] It is unclear who the intended defendants are in this case. The caption of the Second Amended Complaint only names the City, John and Jane Roe Dallas Police Officers, the County, and John and Jane Smith Sheriff's Deputies. *See* Second Am. Compl. 1. However, the Second Amended Complaint also references additional individuals and entities, such as the current and former Dallas police chiefs and the Texas Department of Public Safety. *See, e.g., id.* at 1-2, ¶¶ 24-30. In this Memorandum Opinion and Order, the Court will focus only on the moving Defendants. If Plaintiffs amend their Complaint, the Court instructs them to clearly and consistently identify the individuals and/or entities named as defendants.

As they entered the bridge, Plaintiffs claim they were "met by a line of law enforcement officers dressed in riot gear." *Id.* ¶ 66. Plaintiffs attempted to exit the bridge, but law enforcement officers blocked their exit. *Id.* ¶¶ 66-67. The protesters stopped, put their hands in the air, and chanted, "Hands up! Don't shoot!" *Id.* ¶ 68. Then, all of the streetlights on the bridge went out. *Id.* ¶ 69. The officers told the protesters to go home; however, the protesters allegedly were trapped by law enforcement and could not leave the bridge. *Id.* After several minutes, and allegedly without provocation, law enforcement officers began firing "pepper balls, flash-bangs, smoke bombs, tear gas, and KIPs"[3] into the crowd. *Id.* ¶ 70. Plaintiffs became disoriented. *Id.* ¶ 71. The officers told them to get on the ground, stated that they were under arrest, and zip tied them. *Id.* The officers detained Plaintiffs on the bridge for over two hours. *Id.* ¶ 72. Law enforcement officers initially charged protesters with obstructing a highway or violating a curfew ordinance but ultimately dropped all charges. *Id.* ¶ 98. Plaintiffs claim that the members of law enforcement working the protests were not terminated or disciplined and did not receive additional training or supervision. *Id.* ¶¶ 104-05.

Plaintiffs allege that law enforcement officers in Dallas have used "'less lethal' ammunition against peaceful protesters" once before, during protests in 2018. *Id.* ¶ 84. During those protests, officers allegedly shot protesters with pepper balls. *Id.* Then-Police Chief Ulysha Reneé Hall stated that she was "concerned to learn" that pepper balls had been used and "called for a review of the . . . incident." *Id.* ¶ 85. The officers involved allegedly were not disciplined and did not receive additional training or supervision. *Id.* ¶ 86.

---

[3] According to Plaintiffs, KIPs are "ammunition used commonly in crowd-control settings," including pepper balls and rubber, sponge, or foam bullets. Second Am. Compl. ¶ 79. Here, Plaintiffs particularly challenge the use of pepper balls and "40mm eXact iMpact extended range 'sponge' bullets." *Id.* ¶ 56. Though KIPs are referred to as "nonlethal" or "less lethal," Plaintiffs allege that the "fatality, morbidity, and significant risks of injuries from KIPs have been well documented." *Id.* ¶ 49.

Based on the foregoing allegations, Plaintiffs filed suit, asserting eight causes of action. Against the County, Plaintiffs bring a claim for conspiracy under 42 U.S.C. § 1985 (Count Eight) and, possibly, a claim for unlawful seizure pursuant to 42 U.S.C. § 1983 (Count Four). *Id.* ¶¶ 144-57, 196-200. Against the City, Plaintiffs bring Section 1983 claims for violations of the First Amendment (Count One), excessive force (Count Three), unlawful seizure (Count Four), failure to supervise or discipline (Count Five), failure to train (Count Six), and permanent injunctive relief (Count Seven). *Id.* ¶¶ 106-23, 140-95. Plaintiffs also bring a Section 1985 conspiracy claim against the City (Count Eight). *Id.* ¶¶ 196-200.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007) (citation omitted). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the

4

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). At the motion to dismiss stage, the Court does not evaluate the plaintiff's likelihood of success. It only determines whether the complaint states a claim upon which relief can be granted when viewed in the light most favorable to the plaintiff. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

The County and the City filed separate Motions to dismiss all claims asserted against them. The Court grants both Motions.

#### *A. Dallas County Motion*

Plaintiffs seemingly intended to assert two claims—one for unlawful seizure and one for conspiracy—against the County; however, they only name the County in the conspiracy cause of action. The Court dismisses the unlawful seizure claim for failure to name the County and dismisses the conspiracy claim for failure to state a claim.

##### *i. Unlawful Seizure*

The County moves to dismiss Count Four, Plaintiffs' Fourth Amendment unlawful seizure claim, both on the grounds that the claim is not asserted against the County and because Plaintiffs fail to state a plausible claim. County Mot. 8-17. Plaintiffs bring Count Four against "Law Enforcement Defendants," a term that is not defined in the Second Amended Complaint. Second Am. Compl. 32. Plaintiffs do define the term "Law Enforcement Officers," which refers to "all Defendant Police Officers, Sheriff Deputies, State Troopers[,] and Federal agents" but not to the

5

County. *Id.* ¶ 31. Plaintiffs concede as much, stating that they "amended their complaint to include 'Law Enforcement Defendants' but failed to provide a definition, which . . . intended to include Dallas County." County Resp. 10. Regardless of Plaintiffs' intent, the County is never mentioned in Count Four. Because Plaintiffs do not define the term "Law Enforcement Defendants" and do not include any allegations against the County in Count Four, the County's Motion is granted with respect to the unlawful seizure claim.[4]

*ii. Conspiracy*

The County also moves to dismiss Count Eight, Plaintiffs' Section 1985(3) conspiracy claim. The County moves to dismiss on two grounds: (1) that Section 1985(3) does not apply to state actors and (2) that Plaintiffs fail to state a claim for a conspiracy under Section 1985(3). County Mot. 17-23. As Plaintiffs correctly note, the County does not cite any binding precedent for the proposition that Section 1985(3) claims cannot be brought against state actors, and the Court has not located any. County Resp. 13-14. But because Plaintiffs have failed to state a claim even assuming such claims are cognizable, the Court declines to reach this issue.

42 U.S.C. § 1985(3) prohibits "conspiracies that involve depriving someone of equal protection of the laws or equal privileges and immunities under the laws." *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (citation and internal quotation marks omitted). In the Fifth Circuit, "the only conspiracies actionable under [S]ection 1985(3) are those motivated by racial animus." *Id.* (citation omitted). As the County notes, Plaintiffs do not plead that the alleged conspiracy was motivated by any class-based animus,[5] let alone racial animus, and Plaintiffs did not respond to

---

[4] Even if Plaintiffs had included the County in Count Four, the Court would dismiss this claim for the reasons stated below. *See infra* § III(B)(ii)(a).

[5] It is unclear whether Section 1985(3) encompasses other forms of class-based animus in the Fifth Circuit. *See Gonzales v. Gillis*, No. 21-60634, 2023 WL 3197061, at *4 n.6 (5th Cir. May 2, 2023) (citations omitted). Even if it does, Plaintiffs' conspiracy claim must be dismissed on the same basis.

6

the County's Motion on this point. County Mot. 19. Therefore, Plaintiffs' conspiracy claim against the County must be dismissed.

### B. City of Dallas Motion

The City moves to dismiss certain parties and all claims against it. First, the City argues that the expiration of the statute of limitations necessitates the dismissal of some parties. City Mot. 4 & n.3. Second, the City moves to dismiss the Section 1983 claims brought against it on the ground that Plaintiffs fail to state a claim. *Id.* at 4-5. Third, the City contends that Plaintiffs' claim for a preliminary injunction should be dismissed because an injunction is merely a remedy. *Id.* at 5. Finally, the City moves to dismiss Plaintiffs' Section 1985(3) conspiracy cause of action for failure to state a claim. *Id.* The Court agrees with the City on all fronts.

#### i. Statute of Limitations

As an initial matter, the City moves to dismiss the claims of Plaintiffs Sarah Shirley, Joseph Adams, and Krista Adams and suggests that the Court should sua sponte dismiss all claims against unidentified defendants. *Id.* at 4 n.3, 7. Plaintiffs concede that Shirley's and the Adamses' claims are barred by the statute of limitations. City Resp. 6. Therefore, the Court dismisses their claims with prejudice. However, Plaintiffs do not address the City's argument with respect to Defendants "John and Jane Roe Dallas Police Officers 1-10" and "John and Jane Smith Sheriff's Deputies 1-10." Second Am. Compl. 1. Even if the Court finds that Plaintiffs did not abandon their claims against these Defendants by failing to respond to the City's Motion on this point, *see Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006), the claims are barred by the applicable statute of limitations.

Plaintiffs assert claims against the unidentified Defendants under 42 U.S.C. §§ 1983 and 1985. *See* Second Am. Compl. ¶¶ 106-39, 144-57, 187-200. "Because there is no federal statute of

7

limitations for actions brought pursuant to 42 U.S.C. §§ 1983 and 1985, federal courts borrow the forum state's general personal injury limitations period." *Beckwith v. City of Houston*, 790 F. App'x 568, 575 (5th Cir. 2019) (citation omitted). Texas's statute of limitations for personal injury claims is two years. *Id.* at 572 (citation omitted). Federal law, however, governs when a claim accrues. *See Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (citation omitted). A Section 1983 claim accrues when the plaintiff knows or has sufficient information to know that he has been injured by the defendant's actions, *id.* (citation omitted), and a Section 1985 claim accrues when the plaintiff knows or should know of the overt acts involved in the conspiracy, *Beckwith*, 790 F. App'x at 575-76. In this case, both types of claims accrued on June 1, 2020. *See, e.g., Monacelli v. City of Dallas*, No. 3:21-CV-2649-L, 2023 WL 9052013, at *3 (N.D. Tex. Dec. 29, 2023) ("[T]he statute of limitations commenced to run on June 1, 2020—the date of the protest[.]"). Plaintiffs brought suit within two years of June 1, 2020, but still have not identified the police officers and sheriff's deputies.

"[A]n amended complaint to substitute an individual for a John Doe defendant does not relate back to the date of the original complaint . . . ." *Bond v. Nueces County*, No. 20-40050, 2022 WL 4595000, at *2 n.2 (5th Cir. Sept. 30, 2022) (citation omitted); *see also Balle v. Nueces County*, 952 F.3d 552, 557-58 (5th Cir. 2017) (concluding that an amended complaint does not relate back to the date of the original complaint where the plaintiff substitutes a named individual for a John Doe). The doctrine of equitable tolling is available to preserve Plaintiffs' claims if "strict application of the statute of limitations would be inequitable." *Balle*, 952 F.3d at 558 (citation omitted). But Plaintiffs have not responded to the City's Motion on this point, sought discovery, or otherwise "diligently pursued [their] rights as required for equitable tolling of the limitations period." *Bond*, 2022 WL 4595000, at *2 n.2. Indeed, by filing this case on June 1, 2022, the date

the statute of limitations ran, Plaintiffs all but ensured they would not be able to name the unidentified individuals in time. *See Balle*, 952 F.3d at 558. As such, the Court finds no basis for equitable tolling and dismisses Plaintiffs' claims against John and Jane Roe Dallas Police Officers 1-10 and John and Jane Smith Sheriff's Deputies 1-10.

*ii. Municipal Liability*

The City moves to dismiss Plaintiffs' Section 1983 claims for First Amendment violations (Count One), excessive force (Count Three), and unlawful seizure (Count Four)[6] on the ground that Plaintiffs have not established a basis for municipal liability. City Mot. 8-17. "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation omitted). To state a claim under Section 1983, a plaintiff must allege facts showing (1) a deprivation of a right secured by the Constitution and the laws of the United States; and (2) that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citation omitted). "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted).

A municipal entity like the City cannot be held vicariously liable under Section 1983 for the individual acts of its employees. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citation omitted). "It is only when the 'execution of the government's policy or custom . . . inflicts

---

[6] As discussed, Plaintiffs do not define the term "Law Enforcement Defendants," and as a result, it is unclear who Plaintiffs intend to assert Count Four against. But because the City, unlike the County, is mentioned in the body of Count Four, the Court will proceed as though Plaintiffs pleaded an unlawful seizure claim against the City.

9

the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (alteration in original) (citation omitted). Therefore, to impose Section 1983 liability on the City, Plaintiffs must sufficiently allege "a policymaker; an official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

a. Official Policy or Custom

The City first challenges Plaintiffs' pleadings with respect to an official policy or custom. According to the City, Plaintiffs do not plead facts establishing a policy or custom of "the unlawful seizure of peaceful protesters, retaliation against peaceful protesters, or the use of excessive force against peaceful protesters." City Mot. 10. Plaintiffs respond that they "need not enumerate each and every instance of such violation[s]" and that, regardless, they have established the requisite custom or policy via the single incident exception. City Resp. 8-9.

An official policy is most clearly established through a policy statement formally announced by an official policymaker. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citation omitted). When an official policy is not explicit, however, a persistent and widespread practice by city officials or employees that is so common and well settled as to constitute a "custom" will suffice. *See id.* at 168-69.

Plaintiffs do not identify a formal policy statement; therefore, the Court considers only whether Plaintiffs have adequately alleged a persistent and widespread practice that amounts to a custom. *See, e.g.*, Second Am. Compl. ¶ 141 (identifying only a "*de facto* unwritten policy"). Where a plaintiff relies on a pattern of prior incidents to establish a policy, the plaintiff must plead facts that demonstrate the prior incidents "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct

10

is the expected, accepted practice of city employees." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). The "pattern of abuses" must "transcend[] the error made in a single case." *Id.* at 850-51 (quoting *Piotrowski*, 237 F.3d at 582). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Id.* at 851 (alteration in original) (quoting *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely 'isolated instances.'" *Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

As to Plaintiffs' excessive force claim, Plaintiffs identify only one prior incident: the Dallas Police Department's use of "pepper balls on a non-threatening crowd during the September 2018 protests." Second Am. Compl. ¶ 84; *see also id.* ¶ 141; City Resp. 8 ("Plaintiffs' Amended [C]omplaint does identify that Defendant fired pepper balls during peaceful protests in 2018." (citation omitted)). With respect to this incident, another district court recently held under similar facts:

> One incident of KIP deployment at the Botham Jean protest in 2018, followed by a separate instance the night of May 31, 2020, when an officer allegedly shot a protestor with a PepperBall weapon, is not a "persistent, widespread practice" that is "so common and well settled as to constitute a custom that fairly represents municipal policy."

*Monacelli v. City of Dallas*, No. 3:21-CV-2649-L, 2022 WL 4668054, at *7 (N.D. Tex. Sept. 30, 2022) (quoting *Piotrowski*, 237 F.3d at 579). And this Court reached the same conclusion in another protest-related case, holding that "one incident in 2018, followed by three instances occurring within the span of approximately three days in 2020, without more, does not amount to a plausible allegation of a 'persistent, widespread practice' that is sufficiently 'common and well

11

settled.'" Order at 9, *Cleveland v. City of Dallas*, No. 3:22-CV-01154-S (N.D. Tex. Dec. 28, 2022), ECF No. 7 (citing *Peterson*, 588 F.3d at 850-52).

Moving to the unlawful seizure and First Amendment claims, Plaintiffs allege that "[i]t is the pattern and practice of the City of Dallas . . . to arrest but not charge protesters" and "to employ kettling techniques against peaceful protesters." Second Am. Compl. ¶¶ 153-54. However, Plaintiffs do not point to any prior instances of such conduct, and their conclusory statements do not suffice. In their briefing, Plaintiffs argue that further specificity is unnecessary because "[i]t is widely publicized that [the] City arrested several high profile Black Lives Matter protestors." City Resp. 8. In support, Plaintiffs point to two court cases in which the City prevailed and the respective claims were dismissed with prejudice. *See id.* at 8 n.31; *Alexander v. Brown*, No. 3:18-CV-02101-X, 2020 WL 7056331, at *3 (N.D. Tex. Dec. 2, 2020) (granting summary judgment to the City on Section 1983 municipal liability claims); *Woolum v. City of Dallas*, No. 3:18-CV-2453-B-BN, 2020 WL 687614, at *5 (N.D. Tex. Jan. 22, 2020) (dismissing municipal liability claims against the City), *report and recommendation adopted by* 2020 WL 636903 (N.D. Tex. Feb. 11, 2020). These two instances do not constitute a legally sufficient pattern. Moreover, Plaintiffs' conclusory arguments, which rely only on cases in which courts did not find any constitutional violations, do not point the Court to a pattern of prior violations with the requisite similarity and specificity.

Finally, Plaintiffs allege that the City "has a long history of violating First Amendment rights of protesters" and that the City has a "persistent, widespread pattern or practice of falsely arresting and charging peaceful protestors with false charges." Second Am. Compl. ¶¶ 116-17. But again, Plaintiffs point only to the 2018 incident and to the 2020 protests to support their allegations.

*Id.* ¶ 118. For the reasons stated above, these allegations do not establish a legally sufficient pattern.

Where, as here, a plaintiff cannot identify a pattern or custom, a single decision or action by a final policymaker may, in rare circumstances, constitute a policy. *Zarnow*, 614 F.3d at 169 (citation omitted); *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016) (citation omitted). For liability to attach, the final policymaker must "perform[] the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citation omitted). The Fifth Circuit, "in conformity with the Supreme Court's jurisprudence, has been highly reluctant to permit this exception to swallow the rule that forbids mere respondeat superior liability." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (footnote and citation omitted).

Plaintiffs invoke the single incident exception in their briefing but do not provide any analysis of it. *See* City Resp. 8-9. They do not identify a single decision or action by a final policymaker or argue that any such decision or action was the moving force behind their injuries. Because Plaintiffs have not pointed to any allegations "coming within the ambit of this narrow exception," the Court concludes that Plaintiffs cannot rely on it to establish a basis for municipal liability. *Monacelli*, 2022 WL 4668054, at *11 n.7.

For the foregoing reasons, Counts One, Three, and Four are dismissed for failure to plead an official policy or custom through either a pattern of violations or the single incident exception.[7]

---

[7] Plaintiffs repeatedly allege that the City "ratified" officers' actions. *See, e.g.*, Second Am. Compl. ¶¶ 84, 90-91, 162. Ratification requires that a policymaker "knowingly approve a subordinate's actions and the improper basis for those actions." *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) (citation omitted). The Fifth Circuit has limited ratification to "extreme factual situations." *Peterson*, 588 F.3d at 848 (citation omitted). Neither party addresses ratification in its briefing, and the Court declines to do so without the benefit of the parties' arguments. To the extent Plaintiffs intend to rely on such a theory, they must make that intent clear in any amended complaint that they file.

### b. Violation of Constitutional Rights

With respect to Count One, Plaintiffs' First Amendment claim, the City also challenges the third element—a violation of constitutional rights. City Mot. 15-17. Plaintiffs allege that the City engaged in First Amendment retaliation by using excessive force against and arresting Plaintiffs when Plaintiffs were exercising their First Amendment rights. Second Am. Compl. ¶¶ 112, 120; City Resp. 11-12. According to the City, Plaintiffs were not engaged in constitutionally protected activity because they were breaking the law during the protest. City Mot. 16.

To establish a First Amendment retaliation claim, Plaintiffs must plead facts that demonstrate that: (1) they were engaged in constitutionally protected activity, (2) the officers' action caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the officers' adverse actions were substantially motivated against their exercise of constitutionally protected conduct. *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (citation omitted).

The City argues that Plaintiffs cannot meet the first element because they were violating a Texas law prohibiting obstructing a highway or street. City Mot. 16 (citing TEX. PENAL CODE § 42.03). Plaintiffs respond that police officers "blocked the streets so that there was no traffic to impede" and caused any illegal activity by "block[ing] the streets . . . such that the only route Plaintiffs could take was to enter the bridge." City Resp. 11 (citation omitted). "The First Amendment does not entitle a citizen to obstruct traffic . . . . A State may therefore enforce its traffic obstruction laws without violating the First Amendment, even when the suspect is blocking traffic as an act of political protest." *Singleton v. Darby*, 609 F. App'x 190, 193 (5th Cir. 2015) (citation omitted); *see also Utley v. City of Houston*, No. 21-20623, 2022 WL 2188529, at *1 (5th Cir. June 17, 2022) ("[The plaintiff] was not engaged in constitutionally protected activity when

he was arrested—he was obstructing a roadway in violation of TEX. PENAL CODE § 42.03—so his First Amendment retaliation claim fails." (citation omitted)). Though Plaintiffs claim that there was no traffic to obstruct, they do not argue against the fact that they were obstructing a roadway. *See, e.g.*, Second Am. Compl. ¶¶ 65-69 (describing Plaintiffs' march onto the Margaret Hunt Hill Bridge and position "in the middle of the Bridge").

To the extent Plaintiffs' First Amendment claim is based on their arrests, they must "first establish the absence of probable cause, and then demonstrate that the retaliation was a substantial or motivating factor behind the arrest." *Kokesh v. Curlee*, 14 F.4th 382, 396 (5th Cir. 2021) (citing *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019)). Here, the fact that Plaintiffs were breaking Texas law, as discussed above, provides probable cause. But there is an exception to this rule. "[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that [the plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727. Plaintiffs do not argue that this exception applies, and the Court finds no support in the Second Amended Complaint for the notion that similarly situated individuals not exercising their First Amendment rights were not arrested.

For these additional reasons, the Court grants the City's Motion with respect to Count One, Plaintiffs' First Amendment claim.

### *iii. Failure to Train, Supervise, or Discipline*

Next, the City moves to dismiss Plaintiffs' claims for failure to supervise or discipline and failure to train. City Mot. 17-19. Although Plaintiffs assert their claims in two separate counts (Counts Five and Six), "the elements required to prove a claim under either theory are the same," and the Court considers them together. *Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2021 WL 6884649, at *10 (N.D. Tex. Nov. 24, 2021) (citation omitted), *report and recommendation adopted*

*by* 2022 WL 447085 (N.D. Tex. Feb. 14, 2022). Plaintiffs allege that the City failed to properly train police officers on First and Fourth Amendment rights, the use of "less lethal" forms of ammunition, and the elements of criminal charges. *See, e.g.*, Second Am. Compl. ¶¶ 115, 141, 159, 177. Plaintiffs also allege that the City failed to supervise and discipline officers with respect to these matters. *See, e.g., id.* ¶¶ 158-64. The City contends that Plaintiffs did not plead deliberate indifference, which is required for such claims. City Mot. 17-19.

Claims for failure to train, supervise, or discipline are species of municipal liability claims. *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021). The "failure to train[, supervise, or discipline] can amount to a policy if there is deliberate indifference to an obvious need for training[, supervision, or discipline] where citizens are likely to lose their constitutional rights." *Id.* (citation omitted). For their failure to train, supervise, or discipline claims to survive a motion to dismiss, Plaintiffs must plausibly allege that (1) the City failed to train, supervise, or discipline the officers involved; (2) there is a causal connection between the alleged failure to train, supervise, or discipline and the alleged violation of Plaintiffs' rights; and (3) the failure to train, supervise, or discipline constituted deliberate indifference to Plaintiffs' constitutional rights. *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citation omitted).

The City challenges the third element, deliberate indifference, which requires more than "negligence or even gross negligence"—it is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle*, 613 F.3d at 547 (citation omitted). To plausibly allege deliberate indifference, a plaintiff must demonstrate that "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of*

16

*Canton*, 489 U.S. at 390. A court infers deliberate indifference "either from a pattern of constitutional violations or, absent proof of a pattern, from showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Garza v. City of Donna*, 922 F.3d 626, 637-38 (5th Cir. 2019) (citation and internal quotation marks omitted).

Plaintiffs do not make any additional arguments in support of the existence of a pattern with respect to their failure to train, supervise, or discipline claims; instead, they reiterate the same arguments the Court has already rejected. *See* City Resp. 12 ("Plaintiffs sufficiently establish deliberate indifference as discussed in Section 1 above. Copied below for reference."). For the reasons stated above, Plaintiffs have not alleged a pattern of constitutional violations related to the alleged training, supervision, or disciplinary failures. The alleged 2018 incident is insufficient, standing alone, to constitute a pattern, and Plaintiffs' other pattern-related allegations are conclusory. Accordingly, Plaintiffs fail to establish a pattern of similar violations that constitutes deliberate indifference.

Plaintiffs also cannot establish deliberate indifference through the single incident exception. Again, Plaintiffs invoke the exception but do not provide any specific argument in support of its application. *See* City Resp. 12-13. The exception "is generally reserved for those cases in which the government actor was provided no training [or supervision] whatsoever." *Peña*, 879 F.3d at 624; *see also Est. of Davis*, 406 F.3d at 386 ("We did find a single incident to suffice in *Brown v. Bryan County*, concluding that there was an utter failure to train and supervise." (citing 219 F.3d 450, 462 (5th Cir. 2000))). "[T]here is a difference between a complete failure to train and a failure to train in one limited area." *Peña*, 879 F.3d at 624 (cleaned up). Though Plaintiffs allege in conclusory fashion that the City provided no training, their specific allegations contradict

17

that claim. *See, e.g.*, Second Am. Compl. ¶¶ 85 (referring to General Orders governing officers' use of pepper balls), 87 (same), 92 (alleging that the City should have provided "***additional*** training on how to use the sponge bullets" (emphasis added)), 96 (describing the City's policies on use of deadly force). The City therefore "provided at least some relevant directives or training to its officers." *Hutcheson*, 994 F.3d at 483.

Similarly, though Plaintiffs allege that then-Police Chief Hall "took no action against the officers" who used pepper balls in 2018, Second Am. Compl. ¶ 86, Plaintiffs also allege that Hall "asked [the] investigative unit to conduct a full review" and that a review was in fact conducted and resulted in a finding that "the use of the pepper ball gun was consistent with the department's general orders," *id.* ¶¶ 85, 89 (internal quotation marks omitted).

Plaintiffs have not plausibly alleged deliberate indifference either by pointing to a pattern or a single incident; therefore, their claims for failure to train, supervise, or discipline must be dismissed.

*iv. Permanent Injunction*

The City asks the Court to dismiss Count Seven, titled "Permanent Injunctive Relief," *id.* at 40, because injunctive relief is a remedy, not a cause of action, City Mot. 19. The City is correct that "[a] permanent injunction is not an independent cause of action but an equitable remedy that depends on an underlying cause of action." *Donnelly v. JPMorgan Chase Bank, N.A.*, No. H-15-1671, 2015 WL 6690257, at *4 (S.D. Tex. Oct. 16, 2015) (citing *Massey v. EMC Mortg. Corp.*, 546 F. App'x 477, 483 (5th Cir. 2013)). If Plaintiffs successfully replead the underlying causes of action, their claim for injunctive relief may be proper. But at this time, because the Court dismisses all of Plaintiffs' underlying claims, Plaintiffs' claim for permanent injunctive relief also fails.

*v. Conspiracy*

Like the County, the City moves to dismiss Count Eight, Plaintiffs' Section 1985(3) conspiracy claim, for failure to state a claim. City Mot. 19-22. Among other things, the City notes that Plaintiffs "failed to plead racial animus" and "do not even plead their racial or ethnic heritage." *Id.* at 22. Plaintiffs did not respond to the City's Motion on this point. For the reasons stated above, *see supra* § III(A)(ii), the Court concludes that Plaintiffs' conspiracy claim against the City must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Dallas County's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Claims Alleged Against It in Plaintiffs' Amended Complaint [ECF No. 30] and Defendant City of Dallas's Motion to Dismiss Plaintiffs' Second Amended Complaint [ECF No. 33]. The Court **DISMISSES WITH PREJUDICE** (1) the claims of Plaintiffs Sarah Shirley, Joseph Adams, and Krista Adams and (2) the claims against Defendants John and Jane Roe Dallas Police Officers 1-10 and John and Jane Smith Sheriff's Deputies 1-10. With respect to the remaining parties and claims, because Plaintiffs have requested leave to amend their Complaint, *see* County Resp. 19; City Resp. 18, and given the Federal Rules of Civil Procedure's liberal policy of allowing amendments to pleadings, the Court **GRANTS** Plaintiffs leave to amend their Complaint. Plaintiffs must file an amended complaint by **April 8, 2024**. If an amended complaint is not filed within such time, Plaintiffs' claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED March 25, 2024.

                                                       **KAREN GREN SCHOLER**
                                                       **UNITED STATES DISTRICT JUDGE**