UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOMINIQUE ALEXANDER, et al., | § | |
| Plaintiffs, | § | CIVIL ACTION NO. |
| | § | |
| v. | § | 3:22-CV-1193-S |
| | § | |
| CITY OF DALLAS, TEXAS, et al., | § | |
| Defendants. | § | |

# DEFENDANT DALLAS COUNTY'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' CLAIMS ALLEGED AGAINST IT IN PLAINTIFFS' FIFTH AMENDED COMPLAINT, AND BRIEF

JOHN CREUZOT
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

Jason G. Schuette
Assistant District Attorney
Texas State Bar No. 17827020
jason.schuette@dallascounty.org

Joseph W. Spence
Assistant District Attorney
Texas State Bar No. 18913500
joseph.spence@dallascounty.org

Barbara S. Nicholas
Assistant District Attorney
Texas State Bar No. 24032785
barbara.nicholas@dallascounty.org

Civil Division
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas  75202
Telephone:   214.653.7358
Telecopier:   214.653.6134

ATTORNEYS FOR THE DEFENDANT
DALLAS COUNTY, TEXAS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

I.      SUMMARY OF THE MOTION ................................................................1

II.     BRIEF FACTUAL SUMMARY AND PROCEDURAL HISTORY .................................2

        A.      Summary of Plaintiffs' factual allegations ................................2

        B.      Relevant procedural history ....................................................3

III.    ARGUMENT AND AUTHORITIES REQUIRING DISMISSAL.......................5

        A.      Applicable legal standards for Rule 12(b)(6) motions...........................5

                1.      The standard for dismissal under Rule 12(b)(6):  does the
                        complaint state a valid claim for relief?.................................5

                2.      The *Twombly* facial plausibility standard requires that a
                        complaint plead sufficient non-conclusory facts to permit a
                        reasonable inference that the defendant is liable. ........................6

        B.      Governmental liability under § 1983 ................................................8

                1.      Section 1983 governmental liability requires a policymaker, an
                        official policy, and legal causation. ..........................................8

                2.      As a matter of law, the Dallas County Sheriff is the County's
                        final policymaker with respect to law enforcement operations. .................9

                3.      A plaintiff relying upon the existence of a governmental
                        custom having the force of official County policy must
                        sufficiently plead the existence of the offending custom...........................10

                4.      A plaintiff relying upon a facially constitutional official policy
                        must sufficiently plead the existence of policymaker deliberate
                        indifference. .............................................................................11

                5.      A plaintiff must sufficiently allege nonconclusory facts that
                        permit a reasonable inference of legal causation. ......................................11

        C.      Count One:  Plaintiffs fail to plead facially plausible claims against the
                County for deprivations of First Amendment rights.............................................12

        D.      Count Two:  Plaintiffs fail to plead plausible claims against the County
                for use of excessive force.....................................................................14

E.     Count Three:  Plaintiffs fail to plead plausible claims for unlawful seizure or excessive force claims against the County. ..........................................16

    1.     Plaintiffs' Count Three claims are redundant of their Count One and Count Two claims. ........................................................................16

    2.     Despite being allowed a fourth opportunity to amend, Plaintiffs *still* do not plead seizure or excessive force claims against the County. ..................................................................................................16

F.     Plaintiffs do not plead a viable § 1985(3) conspiracy claim against the County. ..................................................................................................................18

    1.     Pleading standards particular to § 1985(3) conspiracy claims. ................19

    2.     Plaintiffs fail to plead a facially plausible § 1985(3) conspiracy claim against the County. ........................................................................21

CERTIFICATE OF SERVICE ..............................................................................................25

## TABLE OF AUTHORITIES

**CASES**

*Arsenaux v. Roberts*,
   726 F.2d 1022 (5th Cir. 1982) ............................................................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 6, 7

*Bd. of Comm'rs v. Brown*,
   520 U.S. 397 (1997) ............................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 6, 7, 20

*Bennett v. City of Slidell*,
   728 F.2d 762 (5th Cir. 1984) .......................................................................... 8, 10

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) .......................................................................................... 19

*Cantu v. Moody*,
   933 F.3d 414 (5th Cir. 2019) ............................................................................ 19

*Colle v. Brazos County*,
   981 F.2d 237 (5th Cir. 1993) .............................................................................. 9

*Conley v. Gibson*,
   355 U.S. 41 (1957) .............................................................................................. 6

*Deubert v. Gulf Fed. Sav. Bank*,
   820 F.2d 754 (5th Cir. 1987) ............................................................................ 19

*Doerr v. Sisson*,
   563 F. App'x 291 (5th Cir. 2014) ..................................................................... 12

*Doerr v. Sisson*,
   No. 1:09-CV-00199-GHD, 2013 WL 3340487 (N.D. Miss. July 2, 2013) ............ 12

*Drobot v. Barnes*,
   No. 3-10-CV-1656-K-BK, 2011 WL 3820252, (N.D. Tex. July 28, 2011) .......... 15

*Drobot v. Barnes*,
   No. 3-10-CV-1656-K-BK, 2011 WL 3836536, (N.D. Tex. Aug. 29, 2011) .......... 15

*Duncan v. La. State*,
   No. CV 15-5486, 2016 WL 1448888 (E.D. La. Apr. 13, 2016) ................. 19, 20, 24

*Dunsmore v. Kenyon*,
    No. 21-10496, 2022 WL 715490 (5th Cir. Mar. 9, 2022).....................................................19

*E.G. v. Bond*,
    No. 1:16-CV-068-C, 2017 WL 129019 (N.D. Tex. Jan. 13, 2017) ..................................10, 11

*Feliz v. El Paso County*,
    441 F. Supp. 3d 488 (W.D. Tex. Feb. 27, 2020).....................................................................10

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) .....................................................................................................6

*Fraire v. City of Arlington*,
    957 F.2d 1268 (5th Cir. 1992) ..................................................................................11, 12, 18

*Groden v. City of Dallas*,
    826 F.3d 280 (5th Cir. 2016) .....................................................................................................9

*Hare v. City of Corinth*,
    74 F.3d 633 (5th Cir. 1996) .....................................................................................................11

*Hartzog v. Hackett*,
    711 F. App'x 235 (5th Cir. 2018) .......................................................................................11, 18

*Holdiness v. Stroud*,
    808 F.2d 417 (5th Cir. 1987) ...................................................................................................21

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) .....................................................................................................5

*Jackson v. Ford*,
    544 F. App'x 268 (5th Cir. 2013) ..............................................................................................9

*Jackson v. Procunier*,
    789 F.2d 307 (5th Cir. 1986) .....................................................................................................5

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ...................................................................................................5

*Lynch v. Cannatella*,
    810 F.2d 1363 (5th Cir. 1987) .................................................................................................19

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) .....................................................................................................5

*Montgomery v. Walton*,
    759 F. App'x 312 (5th Cir. 2019) ..............................................................................20, 21, 24

*Peterson v. City of Fort Worth,*
  588 F.3d 838 (5th Cir. 2009) ........................................................... 10

*Piotrowski v. City of Houston,*
  237 F.3d 567 (5th Cir. 2001) ...................................................... 8, 9, 10, 11, 13, 15

*Priester v. Lowndes County,*
  354 F.3d 414 (5th Cir. 2004) ........................................................ 20, 24

*Rodriguez v. Parker,*
  No. 1:15-CV-181-P-BL, 2016 WL 4179799 (N.D. Tex. Apr. 27, 2016) ............................. 20

*Rodriguez v. Parker,*
  No. 1:15-CV-181-P-BL, 2016 WL 4184437 (N.D. Tex. Aug. 5, 2016)............................. 20

*Rodriguez v. S. Health Partners, Inc.,*
  No. 3:20-CV-0045-D, 2020 WL 2928486 (N.D. Tex. June 3, 2020) .................................... 10

*Shanklin v. Fernald,*
  539 F. Supp. 2d 878 (W.D. Tex. 2008)................................................................ 22

*Spiller v. City of Tex. City, Police Dep't,*
  130 F.3d 162 (5th Cir. 1997) ...................................................... 11, 12, 17

*Thompson v. Upshur County,*
  245 F.3d 447 (5th Cir. 2001) ........................................................ 11

*Turner v. Upton County,*
  915 F.2d 133 (5th Cir. 1990) ......................................................... 9

*Valencia v. Wiggins,*
  981 F.2d 1440 (5th Cir. 1993) ....................................................... 15

*Way v. Mueller Brass Co.,*
  840 F.2d 303 (5th Cir. 1988) ........................................................ 19

*Webster v. City of Houston,*
  735 F.2d 838 (5th Cir. 1984) .......................................................... 8

*Weisshaus v. Teichelman,*
  No. 2:22-CV-035-Z-BR, 2022 WL 1689443 (N.D. Tex. May 25, 2022)................................ 8

**STATUTES**

42 U.S.C. § 1985(3) ............................................................................ 19

Tex. Loc. Gov't Code § 351.041 ............................................................... 9

**RULES**

Fed. R. Civ. P. 1 ................................................................................................................. 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 5

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 7

TO THE HONORABLE COURT:

The Defendant Dallas County, Texas ("the County"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves the Court to dismiss the claims alleged against it in Plaintiffs' Fifth Amended Complaint (ECF No. 49) ("Complaint" or "Compl.").

## I.      SUMMARY OF THE MOTION

Plaintiffs bring claims pursuant to § 1983 and § 1985 arising from alleged deprivations of their constitutional rights during widespread protests in 2020 connected with the seizure and tragic death of George Floyd in Minneapolis, Minnesota.  Plaintiffs allege generally that law enforcement personnel—Dallas Police Department ("DPD") officers, Dallas County Sheriff's Department ("DCSD") deputies, and Texas Department of Public Safety ("TDPS") troopers, in concert with a host of other state and federal law enforcement agencies and officials, deprived Plaintiffs of their First Amendment rights related to free speech and protest, unlawfully seized and used excessive force against Plaintiffs in violation of the Fourth Amendment, and unlawfully conspired to deprive Plaintiffs of equal protection of the laws, in violation of § 1985(3).  Plaintiffs seek compensatory and punitive damages, temporary and permanent injunctions, and attorney's fees and costs.

The County is entitled to dismissal of Plaintiffs' § 1983 free speech/protest and unlawful seizure and excessive force claims because Plaintiffs fail to plead nonconclusory facts sufficient to state facially plausible governmental liability claims.  More specifically, Plaintiffs fail to plead nonconclusory facts that permit a reasonable inference that an official County policy was the legal cause of the alleged deprivations of Plaintiffs' First Amendment rights to assemble, speak, and seek redress for grievances, or alleged deprivations of Plaintiffs' Fourth Amendment rights to be free from objectively unreasonable seizures and uses of excessive force.

The County is entitled to dismissal of Plaintiffs' § 1985(3) conspiracy claims because Plaintiffs fail to plead nonconclusory facts sufficient to state facially plausible § 1985(3) claims.

1

More specifically, Plaintiffs' well-pleaded factual allegations do not permit the Court to draw a reasonable inference that any County actor—and particularly that a County policymaker—agreed to commit an illegal act. Therefore, Plaintiffs' bare and conclusory allegations of a conspiracy as to the County are insufficient as a matter of law to support liability under § 1985(3).

## II.    BRIEF FACTUAL SUMMARY AND PROCEDURAL HISTORY

### A.    Summary of Plaintiffs' factual allegations

Plaintiffs allege[1] that on 1 June 2020, they participated in mass protests in Dallas that followed the death of George Floyd on 25 May 2020. Compl. para. 63. Plaintiffs allege that they and other protesters gathered to protest peacefully in front of the County's Lew Sterrett Justice Center. *Id.* While the protest was ongoing, DPD officers (but not DCSD deputies) blocked all of the entrances and exits to an identified "garage," which the County assumes would be one of the two multistory parking structures that are adjacent to, or across the street from, the Justice Center. *Id.* para. 64. The protest at the Justice Center morphed into a march toward the nearby Margaret Hunt Hill Bridge ("the Bridge"). *Id.* paras. 2, 65. DPD officers blocked the intersection at the westbound entrance ramp to the Bridge (state highway 366). *Id.* para. 65. The protesters walked westward on the Bridge, but were confronted at the West end by officers attired in "riot gear". *Id.* para. 66. The protesters reversed course, but were met by another group of officers, also attired in "riot gear," approaching from the East-side entrance to the Bridge. *Id.* paras. 66-67. The protesters stopped in the middle of the Bridge and chanted. The officers approaching from the East continued to advance toward the protesters. *Id.* para. 68. Officers verbally instructed the crowd to disperse

---

[1] The County neither concedes nor agrees with all of Plaintiffs' factual allegations, but recites them in this motion to provide to the Court essential background information about the nature of the factual allegations upon which Plaintiffs base their claims against the County and the other Defendants. The County emphatically denies Plaintiffs' allegations that attempt to assert that the County is liable to them.

and return home, but the protesters were confused about how to follow those instructions.  *Id.* para. 69.  Then generically-described "law enforcement officers" without provocation fired flash-bang devices, smoke bombs, tear gas, and "KIPs" ("kinetic impact projectiles") into the crowd.  *Id.* para. 70.  These officers then seized Plaintiffs by telling them to get on the ground and applying zip-ties to Plaintiffs.  *Id.* para. 71.  Plaintiffs were held on the Bridge for over two hours before being released.  *Id.* para. 72.

Plaintiffs' Complaint now comprises six counts, four of which are now directed at Dallas County:

- Count One:  deprivation of rights to assemble, to speak, and to seek redress, arising under § 1983
  Compl. 32-35 paras. 128-145;

- Count Two:  use of excessive force, arising under § 1983
  Compl. 35-38 paras. 146-165;

- Count Three:  unlawful seizure, arising under § 1983
  Compl. 39-41 paras. 166-179; and

- Count Six:  conspiracy to interfere with civil rights, arising under § 1985(3)
  Compl. 49-50 paras. 250-227.

The County seeks dismissal of all four claims.

**B.     Relevant procedural history**

Plaintiffs filed suit on 6 June 2022 (ECF No. 1).  On 13 June 2022, Plaintiffs filed an amended version of the complaint (ECF No. 3), which corrected several pages of typographical gibberish ASCII-code characters in the original version.  Dallas County Judge Clay Jenkins was served with a summons addressed to the County and a copy of the originally-filed Plaintiffs' Original Complaint (ECF No. 1), but not a copy of the amended complaint, on 16 August 2022.  On 2 September 2022, the County filed a Rule 12(b)(6)-based motion (ECF No. 8) to dismiss the claims alleged against it in the amended complaint, ECF No. 3.  On 11 October 2023, Plaintiffs

filed their response (ECF No. 17), in which Plaintiffs asserted, *inter alia*, that omission of Dallas County from the unlawful seizure allegations in Count Four was "inadvertent," and requested leave to amend.  *See* ECF No. 17, at 8 sec. C-1.

In an electronic order entered on 8 February 2023, the Court granted Plaintiffs leave to amend, terminated the County's Rule 12(b)(6) motion as moot without prejudice to refiling, and ordered Plaintiffs to file an amended complaint.  *See* ECF No. 26.  Plaintiffs filed an amended complaint, albeit confusingly mistitled as "Plaintiffs' Original Complaint,"[2] on 28 February 2023 (ECF No. 28).

In response to ECF No. 28, the County filed another Rule 12(b)(6)-based motion to dismiss (ECF No. 30).  On 25 March 2024, the Court entered a Memorandum Opinion and Order (ECF No. 45) that, *inter alia*, (1) dismissed with prejudice certain Plaintiffs' claims as time-barred; (2) dismissed with prejudice the claims asserted against the "Roe" DPD officers and "Smith" DCSD deputies, also based upon expiration of limitations; and (3) granted the County's motion to dismiss without prejudice, subject to Plaintiffs filing by 8 April 2024 yet another amended compliant that cured the defects in ECF No. 28, Plaintiff's second amended complaint.  *See* ECF No. 45, at 19.

Pursuant to that express grant of leave to amend, on 8 April 2024 Plaintiffs filed another confusingly mistitled "Plaintiffs' Second Amended Complaint" (ECF No. 46).  For the reasons explained above, ECF No. 46 was actually Plaintiffs' *third* amended complaint.  But then, on 9 April 2024, Plaintiffs filed—without leave of court—yet *another* "Plaintiffs' Second Amended Complaint," ECF No. 47.  Thus, ECF No. 47 was actually Plaintiffs' *fourth* amended complaint.

Plaintiffs' fourth amended complaint failed to cure obvious ambiguities regarding which

---

[2] Because ECF No. 3 amended ECF No. 1, ECF No. 3 was Plaintiffs' *first* amended complaint, making ECF No. 28 Plaintiffs' *second* amended complaint.  Because of the confusion caused by Plaintiffs' mistitling of their complaints, the County may refer to the complaints by ECF numbers.

Defendants were being sued for which claims.  Therefore, on 11 April 2024, the Court, acting *sua sponte*, entered an Order directing Plaintiffs to file, by 18 April 2024, another amended complaint that, *inter alia*, "clearly and consistently identif[ies] the individuals and/or entities named as defendants," in which "the causes of action must clearly identify which Defendant(s) each claim is asserted against."  *See* ECF No. 48.  Plaintiffs filed their Plaintiffs' Fifth Amended Complaint, ECF No. 49, on 18 April 2024.  However, for the reasons that follow, Plaintiffs *sixth* bite at the apple still fails to plead facially plausible claims against Dallas County.

### III.     ARGUMENT AND AUTHORITIES REQUIRING DISMISSAL

**A.     Applicable legal standards for Rule 12(b)(6) motions**

**1.     The standard for dismissal under Rule 12(b)(6):  does the complaint state a valid claim for relief?**

Rule 12(b)(6) provides for dismissal of a claim if the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims as are stated in the complaint, and such a motion must be evaluated solely on the basis of the pleadings.  *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986).  There are two primary considerations for a court's analysis of the propriety of a motion to dismiss under Rule 12(b)(6).  First, the factual allegations contained in the complaint are to be construed in the plaintiff's favor and all *well-pleaded* facts are to be accepted as true.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  However, conclusory statements in a complaint are not to be accorded a presumption of truth.  *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  Therefore, conclusory allegations and legal conclusions masquerading as factual assertions are not adequate to prevent dismissal for failure to state a plausible claim for relief, and prompt dismissal pursuant to Rule 12(b)(6) is

appropriate. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

Second, the Supreme Court held in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), that the factual allegations in a complaint must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations are true. *Twombly*, 550 U.S.at 555 (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). In other words, it is no longer sufficient that relief could be granted under some theoretical set of facts consistent with a complaint's allegations, which was the familiar standard the Supreme Court set out in *Conley*, 355 U.S. at 45-46. Rather, under *Twombly*, plaintiffs must "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, to survive a motion to dismiss made pursuant to Rule 12, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

2.    **The *Twombly* facial plausibility standard requires that a complaint plead sufficient non-conclusory facts to permit a reasonable inference that the defendant is liable.**

The Supreme Court clarified the scope and application of *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Iqbal* makes clear that the *Twombly* decision was based upon the Supreme Court's interpretation and application of Rule 8, *Iqbal*, 556 U.S. at 684 (citing *Twombly*, 550 U.S. at 554), which "governs the pleading standard 'in all civil actions and proceedings in the United States district courts,'" *id.* (quoting Fed. R. Civ. P. 1)). Therefore, *Twombly's* (and *Iqbal's*) requirements apply to Plaintiffs' allegations against the County.

The legal foundation of this motion is set out in section IV-A of the opinion of the Court in *Iqbal*. In summary, *Iqbal* held that the following standards shall apply when evaluating the sufficiency of *all* federal complaints:

- The rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

6

- A complaint must be plausible on its face.  "A claim has facial plausibility when the Plaintiffs plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

- "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

- A complaint is insufficient if it merely tenders "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Thus, the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556)).

The *Iqbal* Court stated that its decision in *Twombly* was supported by two principles, from which the foregoing standards were derived.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Therefore, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Second, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—'but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (applying Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing the pleader is entitled to relief.")).  Therefore, *Iqbal* directs that a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Such conclusions are not "well-pleaded" factual allegations, and do not plausibly give rise to an entitlement to relief.  Dallas County will demonstrate that the Complaint fails to meet the facial plausibility test as to all four of the claims pleaded against it.

**B.      Governmental liability under § 1983**

**1.      Section 1983 governmental liability requires a policymaker, an official policy, and legal causation.**

A plethora of cases have expounded upon the standards for imposing liability on governmental entity under § 1983.  A governmental entity cannot be liable under a theory of *respondeat superior.  Piotrowski v. City of Houston*, 237 F.3d 567, 568, 578 (5th Cir. 2001) (citing *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).   Isolated unconstitutional actions by local governmental employees will almost never trigger § 1983 liability.  *Piotrowski*, 237 F.3d at 578 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984).  Rather, and as the Fifth Circuit emphasized in *Piotrowski*, municipal or local government liability under § 1983 requires: (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of a constitutional right whose 'moving force' is the policy or custom."  *Id.*  These three "attribution principles" differentiate "individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself."  *Id.*, *quoted in Weisshaus v. Teichelman*, No. 2:22-CV-035-Z-BR, 2022 WL 1689443, at *2 (N.D. Tex. May 25, 2022) (not published).

The Fifth Circuit reiterated in *Piotrowski* that, while official policy "is ordinarily contained in duly promulgated policy statements, ordinances, or regulations," it may arise from a custom, previously defined by the Fifth Circuit in *Webster v. City of Houston* as

> a persistent, widespread practice of [government] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [governmental] policy.

*Piotrowski*, 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

However, it is not sufficient that a plaintiff simply offer the raw assertion that there was a custom having the force of governmental policy.  *Piotrowski* requires Plaintiffs to specifically identify the official policy (custom) that is alleged to have caused the constitutional harm:

> It follows that that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each one is facially constitutional or unconstitutional.

*Piotrowski*, 237 F.3d at 579-80.

### 2. As a matter of law, the Dallas County Sheriff is the County's final policymaker with respect to law enforcement operations.

The first of the three attribution principles for municipal (governmental) liability under § 1983 is the involvement of a final policymaker. *Piotrowski*, 237 F.3d at 578. As the Fifth Circuit noted pointedly in *Piotrowski*, "several Supreme Court cases have discussed the policymaker criterion for municipal liability." *Id.* at 579.

Although Plaintiffs were not required to plead the identity of Dallas County's final policymaker pertinent to their claims,[3] here Plaintiffs plead that the elected Sheriff, Defendant Marian Brown, is "a final policymaker for the Sheriff's Department." Compl. para. 28. Plaintiffs are correct. As a matter of well-settled law, the pertinent final policymaker for all law enforcement operations by Dallas County is the elected Dallas County Sheriff, Sheriff Marian Brown, who oversees the operations of the Dallas County Sheriff's Department. Under settled Texas law, the county Sheriff is the chief (final) county policymaker for law enforcement, and the Sheriff's directives establish county policy. *See*, *e.g.*, *Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990) ("It has long been recognized that, in Texas, the county Sheriff is the county's final policymaker in the area of law enforcement . . . by virtue of the office to which the sheriff has been elected.").[4] So, although Plaintiffs were not required to plead the identity of the County's final

---

[3] *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016) (holding that a § 1983 plaintiff is not required to plead the identity of the final governmental policymaker).

[4] Nothing has changed in the intervening years since the Fifth Circuit decided *Turner*. "[I]n Texas, '[t]he sheriff is without question the county's final policymaker in the area of law enforcement.'" *Jackson v. Ford*, 544 F. App'x 268, 272 (5th Cir. 2013) (per curiam) (quoting *Colle v. Brazos County*, 981 F.2d 237, 244 (5th Cir. 1993); TEX. LOC. GOV'T CODE § 351.041 (West 2011)); *see*

policymaker with respect to law enforcement operations, their Complaint's facial plausibility must be measured against the nonconclusory facts that Plaintiffs do plead, if any, that would permit a reasonable inference of the final policymaker's involvement—that is, Sheriff Marian Brown's involvement—in the DCSD personnel's conduct of which Plaintiffs complain.

### 3. A plaintiff relying upon the existence of a governmental custom having the force of official County policy must sufficiently plead the existence of the offending custom.

The second of the three attribution principles for governmental liability under § 1983 is the existence of an official government policy. *Piotrowski*, 237 F.3d at 578. Official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *4 (N.D. Tex. Jan. 13, 2017) (Cummings, J.) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotations omitted)). As a matter of pleading sufficiency, a plaintiff must identify with specificity an actual government policy that led to the injuries alleged. *Bond*, 2017 WL 129019, at *4 ("The Court agrees with the Magistrate Judge's opinion that the law requires Plaintiffs to identify an actual policy of the County that led to Plaintiffs' injuries") (citing *Bennett*, 728 F.2d at 767). In *Bond* the allegations of policy were insufficient because "nothing in the Amended Complaint identifie[d] any actual training policy (or supervision or discipline policy) or practice of the County of Abilene that was defective or that was adopted with deliberate

---

also *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 503 (W.D. Tex. Feb. 27, 2020) ("Texas law is clear that a sheriff is a county's 'final policymaker in the area of law enforcement,' including county jails." (citations omitted)), *cited in Rodriguez v. S. Health Partners, Inc.*, No. 3:20-CV-0045-D, 2020 WL 2928486, at *14 (N.D. Tex. June 3, 2020) (Fitzwater, J.). Thus, this Court adheres to the long line of precedent that establishes the county Sheriff as a county's final policymaker for all county law enforcement operations.

indifference." *Bond*, 2017 WL 129019, at *4. This Court's holding in *Bond* is entirely consistent with Fifth Circuit precedent. *See Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (holding that a § 1983 plaintiff must identify an offending policy with specificity).

**4.    A plaintiff relying upon a facially constitutional official policy must sufficiently plead the existence of policymaker deliberate indifference.**

Absent a facially unconstitutional policy or custom, governmental liability under § 1983 can only arise from a custom having the force of official policy if governmental final policy-makers were deliberately indifferent to the "'known or obvious consequences' that constitutional violations would result" from the custom. *Piotrowski*, 237 F.3d at 579.

The Fifth Circuit repeatedly emphasizes the extreme level of subjective knowledge and knowing disregard embodied in the deliberate indifference standard:

> The deliberate indifference standard is extremely high. It requires a plaintiff to show that "1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjec-tively intended that harm occur."

*Hartzog v. Hackett*, 711 F. App'x 235, 235-36 (5th Cir. 2018) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001)) (citing *Hare v. City of Corinth*, 74 F.3d 633, 649-50 (5th Cir. 1996)). *See also See Estate of Davis*, 406 F.3d at 381 ("For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

**5.    A plaintiff must sufficiently allege nonconclusory facts that permit a reasonable inference of legal causation.**

The third of the three attribution principles for government liability under § 1983 is legal causation. *Piotrowski*, 237 F.3d at 578. The Fifth Circuit has explained that a § 1983 plaintiff must demonstrate a direct causal connection between official government policy and a resultant actionable harm. As stated in *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992):

> [A] direct causal connection must exist between the policy and the alleged
> constitutional deprivation.  This connection must be more than a mere "but
> for" coupling between cause and effect.  To form the basis of liability under
> § 1983, a municipal policy must be affirmatively linked to the constitutional
> violation and be the moving force behind it.

*Id.* at 1281 (footnotes omitted), *cited in Doerr v. Sisson*, No. 1:09-CV-00199-GHD, 2013 WL 3340487, at *6 (N.D. Miss. July 2, 2013), *aff'd*, 563 F. App'x 291 (5th Cir. 2014). Put another way, the description of a policy or custom and its relationship to the underlying constitutional violation cannot be a mere conclusion, but must contain specific facts.  *Spiller*, 130 F.3d at 167.

**C.     Count One:  Plaintiffs fail to plead facially plausible claims against the County for deprivations of First Amendment rights.**

Whereas in previous iterations of their Complaint Plaintiffs pleaded in Count One claims for "FIRST AMENDMENT VIOLATION[S]" solely against the "City of Dallas Defendants," Plaintiffs now assert those Count One claims against "All Defendants."[5]  Despite the change in the heading/caption for Count One, the allegations for Count One in the live Complaint are *virtually identical* to the allegations in the prior complaint that this Court found insufficient to state a viable claim.  *Compare* ECF No. 28 paras. 106-123 *with* ECF No. 49 paras. 128-145.  Plaintiffs allege that only the "City of Dallas Defendants," or the presumed constituent components of that now undefined shorthand reference[6]—the City of Dallas, and/or DPD chiefs Hall and Garcia—took action against Plaintiffs.  *See* Compl. paras. 128-145.

---

[5] *Compare* the heading/caption for Count One in Plaintiffs' previous "Second Amended Complaint" (ECF No. 28, at 26) *with* the heading/caption for Count One in the live Complaint (ECF No. 49, at 32).

[6] As tempted as one might be to assume that Plaintiffs would heed the Court's explicit directive in the 11 April 2024 Order to "clearly and consistently identify the individuals and/or entities named as defendants" (*see* ECF No. 48, at 2), the live Complaint, ECF No. 49, does not define the "City of Dallas Defendants."  Instead, the Complaint now defines on page 1 the "City Defendants," but continues to use haphazardly the term "City of Dallas Defendants" that was used in the prior complaints and that included the unidentified "John and Jane Roe Dallas Police Officers 1-10," which individuals have now been dismissed.  *See* ECF No. 28, at 1-2.

The exclusive alleged direct actors were the "City of Dallas Defendants"—properly understood in the context of the live Complaint to be the City of Dallas, DPD officers, and DPD Chiefs Hall and Garcia. The *only* alleged policymaking actor was former DPD Police Chief Hall. The only "written and unwritten policies" in play were those of the City of Dallas/DPD. That is to say, nowhere in Count One do Plaintiffs allege participation by the "County Defendants" or any of that term's defined constituent parts:[7] the County and the County's final policymaker, Sheriff Marian Brown. *See* Compl. paras. 128-145. Thus, Count One fails to allege facts that permit a reasonable inference of participation by *the County* in any deprivations of Plaintiffs' First Amendment rights.

Moreover, even if the Court were somehow to infer participation by DCSD deputies in the conduct that Plaintiffs attribute specifically and exclusively to DPD officers, Plaintiffs still entirely fail to plead nonconclusory facts that permit a reasonable inference of (a) the existence of an identified *County/DCSD* custom having the force of policy that was the moving force and actual cause of any of the First Amendment deprivations alleged, (b) County policymaker deliberate indifference, and (c) legal causation. *See* Compl. paras. 128-145. Therefore, the Complaint fails to satisfy any of the three attribution principles of § 1983 liability discussed in *Piotrowski*: an official policy, policymaker involvement, and a direct causal link between the execution of policy and the constitutional deprivations alleged. *See Piotrowski*, 237 F.3d at 578-80.

For these reasons, Plaintiffs fail to plead a facially plausible First Amendment claim against the County, the Court should dismiss with prejudice the Count One claims as against the County.

---

[7] Plaintiffs again failed to comply with the Court's explicit directive in ECF No. 49 to "clearly and consistently identify the individuals and/or entities named as defendants." The Complaint does not define the "Dallas County Defendants." Instead, the Complaint now confusingly defines the "County Defendants" as "Dallas County, Texas; Dallas County Sheriff Marian Brown ('Sheriff Brown') in her individual and official capacities; and Dallas County," *see* Compl. 1, but continues to use the undefined term "Dallas County Defendants" in various places throughout the Complaint. The simple task of consistently categorizing and labeling Defendants appears to be out of reach.

**D.      Count Two:  Plaintiffs fail to plead plausible claims against the County for use of excessive force.**

Whereas in previous iterations of their Complaint Plaintiffs pleaded in Count Two claims for "EXCESSIVE FORCE" exclusively "Against DPD Officer Defendants," Plaintiffs now assert their Count Two claims "Against All Defendants."[8]  And, Plaintiffs now define "Law Enforcement Officers" to include DCSD deputies (*see* Complaint paragraph 148, footnote 13), and Plaintiffs' allegations of misconduct in Count Two now embrace more than that of DPD officers.  Despite the change in the heading/caption for Count Two, and the expanded definition of "Law Enforcement Officers," the allegations for Count Two in the live Complaint suffer from the same defects in pleading of facts to support County § 1983 liability that doom Plaintiffs' Count One claims.

As in Count One, the only alleged policymaking actor is former DPD Police Chief Hall.  *See* Compl. para. 152 ("Former Chief Hall instituted a policy and practice of using excessive force against non-threatening, peaceful protesters as a means of intimidation and control.").  Plaintiffs do not plead that Sheriff Marian Brown, or any other putative Dallas County final policymaker, instituted any policy of using excessive force against peaceful protesters.

Finally, just as with the allegations in Count One, the *only* policies in play were those of the City of Dallas and/or of its police department, and the *only* policymakers involved were City of Dallas officials:  the City Council, the Mayor, the City Manager, and Chief Hall.  *See* Compl. paras. 162-164.  The only specifically identified policy is "the City of Dallas's *de facto* unwritten policy that allows police to use 'less-lethal'—but not 'nonlethal' ammunition and devices against a crowd . . . ."  *See* Compl. para. 163.  Only the "City of Dallas Defendants" are alleged to have

---

[8]  *Compare* the heading/caption for Count Two in Plaintiffs' previous "Second Amended Complaint" (ECF No. 28, at 28) *with* the heading/caption for Count Two in the live Complaint (ECF No. 49, at 35).

been "deliberately indifferent," and then only with respect to DPD officer training.  *See* Compl.

para. 163.  And, finally, only the "written and unwritten policies of the City of Dallas" are alleged

to be the "moving forces" behind the uses of excessive force.  *See* Compl. paras. 164-165.

Thus, even if the Court infers that Plaintiffs have now sufficiently pleaded participation by

DCSD deputies in the misconduct that Plaintiffs actually attribute specifically to DPD officers,

Plaintiffs still entirely fail to plead nonconclusory facts that permit a reasonable inference of (a)

the existence of an identified *County/DCSD* policy that was the "moving force and actual cause"

of the Fourth Amendment deprivations alleged,[9] coupled with (b) direct involvement or deliberate

indifference by a *County/DCSD* final policymaker.  *See* Compl. paras. 147-161.  Therefore, the

Complaint still fails to satisfy any of the three attribution principles of § 1983 liability the Fifth

Circuit discussed in *Piotrowski*:  an official policy, a policymaker, and a direct causal link between

the policy and the constitutional deprivations alleged.  *See Piotrowski*, 237 F.3d at 578-80.

For these reasons, Plaintiffs fail to plead a facially plausible Fourth Amendment excessive

force claim against the County.  The Court should dismiss with prejudice Plaintiffs' Count Two

claims as against the County.

---

[9] Complaint paragraph 160 asserts violations of Plaintiffs' *Fourteenth* Amendment rights to due process in connection with the uses of force:  "Defendants' use of force was inappropriate and unwarranted as a use of crowd control for peaceful, non-threating participants in protests, in violation of the Plaintiffs' Fourteenth Amendment rights to due process."  However, because the facts Plaintiffs allege pertaining Plaintiffs' encounters with law enforcement officers describe uses of force against arrestees rather than against pretrial detainees, *see* Compl. paras. 48-78, the protections of the Fourth Amendment, not the Fourteenth Amendment, apply to Plaintiffs' claims. *See, e.g.*, *Drobot v. Barnes*, No. 3-10-CV-1656-K-BK, 2011 WL 3820252, at *2 (N.D. Tex. July 28, 2011) (Toliver, M.J.) (not reported), report and recommendation adopted, No. 3:10-CV-1656-K, 2011 WL 3836536 (N.D. Tex. Aug. 29, 2011) (Kinkeade, J.) ("The protections of the Fourth Amendment extend to an arrestee until he becomes a pretrial detainee, which occurs after (1) the arrest is complete, (2) he has been released from the arresting officer's custody, and (3) he has been in detention awaiting trial for a significant period of time.") (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir. 1993)).

**E.      Count Three:  Plaintiffs fail to plead plausible claims for unlawful seizure
        or excessive force claims against the County.**

> **1.      Plaintiffs' Count Three claims are redundant of their Count One and
>         Count Two claims.**

In the two complaints that preceded the live complaint, ECF Nos. 28 and 47, Count Four

was a § 1983 unlawful seizure claim against the "Law Enforcement Defendants."  *See* ECF No.

28, at 32, and ECF No. 47, at 39.  That claim is now found in Count Three, and is asserted "Against

All Defendants."  ECF No. 49, at 39.  As with Counts One and Two, Plaintiffs fail to plead facts

that allow a reasonable inference of any of the three *Piotrowski* attribution principles with respect

to Dallas County.

To begin, it is difficult to see how what is now alleged in Count Four as "Unlawful Seizure"

differs in any cognizable way from what is already alleged in Counts One and Two:  the use of

unlawful force to unlawfully restrict protesters' movements and protesters' exercise of rights to

assemble, speak, and petition for redress guaranteed by the First Amendment.[10]  Thus, Count Three

is functionally redundant of Counts One and Two.  But even if Count Three pleads something sub-

stantively distinct, the Count Three allegations fail to plead nonconclusory facts to support County

§ 1983 liability.

> **2.      Despite being allowed a fourth opportunity to amend, Plaintiffs *still*
>         do not plead seizure or excessive force claims against the County.**

Even assuming that Count Three pleads claims against Dallas County that substantively

differ from the claims in Counts One and Two, any such claims are not facially plausible.  Plaintiffs

do not plead facts sufficient to permit a reasonable inference that a County "official policy" was

---

[10] Plaintiffs allege in Complaint paragraph 168 that they were "seized by Defendants when
Defendants prevented Plaintiffs from leaving the Frank Crowley Courts Building following the
peaceful protest that took place on June 1, 2020."  However, Plaintiffs plead in paragraph 64 that
"*DPD* blocked all of the entrances and exits to the garage, so no Plaintiff or other protesters who
were parked in the garage could leave" (emphasis added).

the legal cause of any DCSD deputies' alleged misconduct.  That is, Plaintiffs do not plead facially plausible wrongful seizure claims against the County because Plaintiffs fail to plead (1) facts sufficient to support a reasonable inference of the existence of a persistent and widespread DCSD custom having the force of official policy of the unlawful seizure of peaceful protesters, (2) facts sufficient to allow a reasonable inference of deliberate indifference to such unlawful seizures by the County's final policymaker, and (3) facts sufficient to support a reasonable inference of legal causation, *i.e.*, that a County policy was the "moving force" behind DCSD deputies' misconduct.

*First*, Plaintiffs do not adequately plead involvement by DCSD deputies.  Rather, Plaintiffs allege that "DPD Officers and [Texas Department of Public Safety] DPS Officers" deployed and used various less-lethal devices and munitions against the protesters."  Compl. para. 174.  There is no allegation that DCSD personnel were involved in the misconduct alleged in paragraph 174.

*Second*, Plaintiffs identify solely City/DPD and DPS policies as having caused the unlawful seizures in issue.  *See* Compl. para. 173 (alleging that the "City of Dallas's and Chief Hall's failure to train, supervise, and discipline its officers or issue corrective instructions after violations were brought to light, that caused the unlawful seizures and excessive use of force"); para. 175 ("it is the pattern and practice of the City of Dallas and Chief Hall to arrest but not charge protesters as a means to suppress First Amendment Rights.  . . . .  [I]t is also the City of Dallas's *de facto* unwritten policy for police to use "less lethal" ammunition and devices against a crowd . . . .").  Plaintiffs do not plead at all—much less with specificity—the existence of a *County/DCSD* policy or custom having the force of policy, as is required by Fifth Circuit precedent.  *See Spiller*, 130 F.3d at 167 (holding that a § 1983 plaintiff must identify an offending policy with specificity).

*Third*, Plaintiffs fail to plead any facts from which the Court can reasonably infer that the County's final policymaker, whether it be Sheriff Brown or some other unidentified person(s), was

17

deliberately indifferent to a known or obvious risk that an identified *County/DCSD* policy would lead to the complained-of deprivations of Plaintiffs' Fourth Amendment rights.[11]   *See* Compl. paras. 167-178.

*Fourth*, Plaintiffs fail to plead sufficient facts to permit a reasonable inference of legal causation.   This failure inescapably flows from Plaintiffs' failure to identify a County/DCSD policy.   A non-existent policy could not possibly have been the "moving force" behind DCSD deputies' actions—actions that Plaintiffs allege were taken by DPD officers and DPS troopers.   In other words, Plaintiffs do not even plead facts that might establish the "mere 'but for' coupling between cause and effect" that the Fifth Circuit requires.   *See Fraire*, 957 F.2d at 1281.

For these several reasons, Plaintiffs' § 1983 seizure claims pleaded against the County in Count Three lack facial plausibility, and must be dismissed.

**F.   Plaintiffs do not plead a viable § 1985(3) conspiracy claim against the County.**

Plaintiffs also plead that the County is liable under § 1985(3) for a civil conspiracy with all of the other Defendants to "(a) deprive, either directly or indirectly, Plaintiffs (and other protesters) of the equal protection of the laws, and of equal privileges and immunities under the laws; or (b) hinder others from giving or securing equal protection of law to all persons in violation of 42 U.S.C. § 1985(3)."   Compl. para. 221.   That claim must fail because Plaintiffs fail to plead facts that permit inferences of an agreement to deprive Plaintiffs of their rights and of race-based animus.

---

[11] Any such allegations would have to be sufficient to allow a reasonable inference that an official County final policymaker—presumably Sheriff Marian Brown as a matter of law—1) was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the policymaker actually drew the necessary inferences; and 3) the policymaker's response indicates the policymaker subjectively intended that harm occur.   *Hartzog*, 711 F. App'x at 235-36.   Such inferences are obviously impossible given the paucity of factual allegations in the Complaint.

### 1.    Pleading standards particular to § 1985(3) conspiracy claims

42 U.S.C. § 1985(3) provides for a private right of action for the recovery of damages for conspiracies "to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory the equal protection of the laws."  Here, Plaintiffs allege that all of the Defendants conspired to deprive them of their constitutional right to equal protection of the laws, in violation of § 1985(3).  (Compl. 43 para. 197:  "Defendants, in whole or part, conspired with each other . . . in violation of 42 U.S.C. § 1985(3).")

Claims brought under the equal protection components of § 1985(3) must allege that the conspiracy was "aimed at" the denial of equal protection based upon discriminatory animus.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993).  The Fifth Circuit has made clear that a claim under § 1985(3) must include an allegation of race-based or class-based animus.  *See*, *e.g.*, *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) ("[I]n this circuit . . . the only conspiracies actionable under section 1985 are those motivated by racial animus.") (citing *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)).

In addition to specific allegations that race or class-based animus motivated the conspiracy, a plaintiff alleging a § 1985(3) conspiracy must plead more than bare conclusions that the conspiracy existed.  "Plaintiffs who assert conspiracy claims under the civil rights statutes must plead the operative facts showing a prior illegal agreement, and bald allegations of an agreement do not suffice."  *Dunsmore v. Kenyon*, No. 21-10496, 2022 WL 715490, at *1 (5th Cir. Mar. 9, 2022) (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 308 (5th Cir. 1988)) (internal quotation marks and citation omitted).  *See also Duncan v. La. State*, No. CV 15-5486, 2016 WL 1448888, at *3 (E.D. La. Apr. 13, 2016) (citing *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987)) (same).

To that point, a § 1985(3) plaintiff must allege nonconclusory *facts* sufficient to suggest an

*agreement* among one or more parties, and the agreement itself must be to violate a plaintiff's civil rights. *Twombly*, 550 U.S. at 557 ("a conclusory allegation of agreement at some unidentified point does not show facts adequate" to support a conspiracy). In fact, the same strict requirement applies to claims alleging a conspiracy under § 1983. "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983." *Montgomery v. Walton*, 759 F. App'x 312, 315 (5th Cir. 2019) (per curiam) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24 (5th Cir. 1982)). Rather, a plaintiff must plead specific, nonconclusory facts that establish that there was an agreement among the defendants to violate his civil rights. *See Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) ("Allegations that are merely conclusory, without reference to specific facts, will not suffice" to establish a § 1983 conspiracy claim). Thus, no matter whether pleaded under § 1983 or § 1985(3), a complaint that does not allege specific facts showing an agreement to violate civil rights does not state a facially plausible claim, and must be dismissed.

The case of *Duncan v. Louisiana State* is highly instructive on this point. In *Duncan*, the court held a complaint was deficient to state a § 1985 claim where the plaintiff merely alleged that "Tangipahoa Parish Registrar of Voters John Russell and Tangipahoa Parish Registrar of Voters Office did conspire to participate in meetings and discussions and did participate in meetings and discussions in which voter identification was discussed or should have been discussed." *Duncan*, 2016 WL 1448888, at *4. Similarly, in *Rodriguez v. Parker*, No. 1:15-CV-181-P-BL, 2016 WL 4179799, at *4 (N.D. Tex. Apr. 27, 2016), *report and recommendation adopted*, No. 1:15-CV-181-C-BL, 2016 WL 4184437 (N.D. Tex. Aug. 5, 2016), this Court granted a motion to dismiss the plaintiff's § 1985(3) conspiracy because the plaintiff did not plead "any facts that would suggest a preconceived agreement" to violate the plaintiff's rights. Indeed, the Fifth Circuit

has explained that "[t]he heart of the cause of action accorded by § 1985 is a conspiracy to interfere with a person's civil rights.  The essence of a conspiracy is an understanding or agreement between the conspirators."  *Holdiness v. Stroud*, 808 F.2d 417, 424-25 (5th Cir. 1987).

The Fifth Circuit's analysis in *Montgomery v. Walton* is similarly enlightening on the specificity required to plead a facially sufficient § 1983 conspiracy claim:

> As noted above, Montgomery's amended complaint is disorganized and the facts are very loosely tied together.  At points in this complaint, Montgomery alleges that the defendants "act[ed] in concert," "agree[d]" to plant contraband, and "elicited aid" from each other for the purpose of violating his civil rights.  Most importantly, although he alleges there was an agreement—an agreement to kill or imprison him—these allegations are largely conclusory without any identification of time, date, or circumstance. *Cf. Jabary v. City of Allen*, 547 F. App'x 600, 611 (5th Cir. 2013) (holding that allegations that local officials "actively conspired with each other" and engaged in "several conversations, private meetings, and other communications" to deprive plaintiff of his civil rights were insufficient under Rule 12(b)(6) to state a § 1983 conspiracy claim).  It would appear that Montgomery strives to allege an overarching conspiracy by persons associated for the purpose of setting him up for the criminal conduct that has landed him in prison. . . .  Furthermore, there is no alleged common motive between Espin and Walton, or among all of the defendants for that matter, except a vague and conclusory assertion that they "wanted [Montgomery] dead" or imprisoned because he was a threat to Espin.

*Montgomery*, 759 F. App'x at 314-15.

In summary, a complaint alleging a civil rights conspiracy claim that fails to plead more than raw conclusions that there was an understanding or agreement among the alleged conspirators fails to state a facially plausible claim for relief, and must be dismissed.

### 2. Plaintiffs fail to plead a facially plausible § 1985(3) conspiracy claim against the County.

Plaintiffs' § 1985(3) fails, not merely against the County, but in its entirety.

*First*, Plaintiffs fail to plead facts sufficient to reasonably infer actionable race or class-based animus.  Here, Plaintiffs plead that the supposed conspiracy was motivated by race or class-based animus, because "[a]lthough not all plaintiffs are black, they were all exercising their First

Amendment right to protest in support of the rights of a protected class," and Plaintiffs chanted "'Black Lives Matter!'" as they were protesting.  Compl. para. 223.  Those cursory allegations do not permit a reasonable inference of race or class-based animus.  *C.f. Shanklin v. Fernald*, 539 F. Supp. 2d 878, 887 (W.D. Tex. 2008) (unpublished) (holding that animus toward a protester's message not actionable under § 1985(3)).

      *Second*, Plaintiffs fail to plead nonconclusory facts that permit a reasonable inference of an agreement among the alleged conspirators.  On that point, it would be generous to call Plaintiffs' factual allegations regarding the County's supposed involvement in the conspiracy "sparse."  Complaint paragraph 224 alleges the bare conclusion of a conspiracy among all of the Defendants for the purpose of "depriv[ing] Plaintiffs of the equal protection of the laws or to prevent or inhibit others from giving or securing equal protection to all persons."  However, Plaintiffs do not plead any *facts* that support that conclusion, much less facts that tend to show a specific agreement by policymaking Dallas County official—or by any Dallas County officials.  Plaintiffs plead that Sheriff Brown is a County final policymaker in the sphere of law enforcement (*see* Compl. para. 28), but Plaintiffs plead no facts to support a reasonable inference that Sheriff Brown, or any other Dallas County policymaking actor for that matter, specifically agreed beforehand with another alleged conspirator to deprive any of Plaintiffs of their civil rights.

      The bulk of the Complaint's allegations related to a § 1985(3) conspiracy reside in Count Six of the Complaint.  Plaintiffs allege:

> 221.  As to each of the above causes of action, by the facts set out herein, Defendants, in whole or part, conspired with each other to (a) deprive, either directly or indirectly, Plaintiffs (and other protesters) of the equal protection of the laws, and of equal privileges and immunities under the laws; or (b) hinder others from giving or securing equal protection of law to all persons in violation of 42 USC § 1985(3).
>
> . . . .

22

224.  The Defendants conspired (1) across separate law enforcement departments and (2) between local police (Dallas Defendants), county Defendants, state police, and federal agencies to deprive Plaintiffs of the equal protection of the laws or to prevent or inhibit others from giving or securing equal protection to all persons.

225.  The DPD After Action Report and photographs taken by Plaintiffs show that County and City Defendants as well as unnamed state actors  were present at the protests Plaintiffs attended and that they engaged in the same actions that violated Plaintiffs' constitutional rights as the City Defendants.

Paragraphs 211 and 224 plead merely raw conclusions that there was a conspiracy.  Paragraph 225 pleads merely that the County Defendants were "present at the protest," and engaged in allegedly unlawful conduct along with City Defendants.[12]  Critically, however, the Complaint contains no factual allegations whatsoever that permit a reasonable inference that:

- Sheriff Brown or any other DCSD actors reached an *agreement* with DPD, TDPS, or Federal actors to violate Plaintiffs' equal protection rights; or

- the Dallas County Commissioners Court, or any other County actors, reached an *agreement* with DPD, TDPS, or Federal actors to violate Plaintiffs' equal protection rights; or

- Sheriff Brown or any other DCSD actors reached an *agreement* with DPD, TDPS, or Federal actors to hinder others from "giving or securing equal rights to all persons"; or

- the Dallas County Commissioners Court, or any other County actors, reached an *agreement* with DPD, TDPS, or Federal actors to hinder others from "giving or securing equal rights

---

[12] The allegations in paragraph 224 strain credulity and lead to nonsensical results.  Plaintiffs define the "County Defendants" as " Dallas County, Texas; [and] Dallas County Sheriff Marian Brown ('Sheriff Brown'), in her individual and official capacities."  Compl. 1.  In a parallel manner, the Complaint defines the "City Defendants" as "The City of Dallas, Texas; City of Dallas Police Chief Edgardo 'Eddie' Garcia ('Chief Garcia') in his individual and official capacities; City of Dallas Former Police Chief Ulysha Reneé Hall ('Chief Hall') in her individual and official capacities."  *Id.*  Notably, the Plaintiffs' definitions *do not* include the County's or the City's respective law enforcement personnel.

Properly read then, paragraph 225 alleges that "the County" and "the City" were "present" at the protests, an allegation that can be true only in a metaphysical sense.  Further, Plaintiffs allege that the City Defendants "engaged in the same actions that violated Plaintiffs' constitutional rights as [did] the City Defendants," which is nonsensical.  Finally, given that Plaintiffs' definitions of the "County Defendants" and the "City Defendants" include Sheriff Brown and Chiefs Hall and Garcia, respectively, Plaintiffs apparently allege that Brown, Hall, and Garcia were present at the protests and personally deployed less-lethal munitions and devices against Plaintiffs.

to all persons."

Thus, Plaintiffs plead no *operative facts* that suggest a prior illegal agreement, and particularly, no facts to suggest that the County's final policymaker, Sheriff Brown, entered into a prior agreement to deprive protesters of their civil rights.  Indeed, Plaintiffs' conclusory allegations do not even rise to the level of the cursory facts alleged in *Duncan*, where the plaintiff at least pled that the alleged conspirators took part in "meetings and discussions," *Duncan*, 2016 WL 1448888, at *4, or in *Montgomery*, where the plaintiff at least pled that there was an agreement to "kill or imprison him," and that the alleged conspirators engaged in "conversations, private meetings, and other communications" to formulate the alleged conspiracy.  *See Montgomery*, 759 F. App'x at 314-15.

Clearly, the Complaint pleads no more than the bare conclusion that Dallas County entered into a conspiracy.  Plaintiffs provide no specific factual allegations that tend to show an agreement to violate Plaintiffs' equal protection rights.  That is, Plaintiffs' allegations "are merely conclusory, without specific facts, [and] will not suffice" to establish a § 1985(3) conspiracy claim.  *Priester*, 354 F.3d at 420.  Therefore, Plaintiffs fail to plead a facially plausible § 1985(3) conspiracy claim against the County, and the County is entitled to dismissal pursuant to Rule 12(b)(6).

WHEREFORE, the Defendant Dallas County, Texas asks the Court to dismiss Plaintiffs' claims against it as requested herein, and that the Court grant the County all such other and further relief to which it is entitled.

24

Respectfully submitted,

JOHN CREUZOT
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

*/s/ Jason G. Schuette*
Assistant District Attorney
Texas State Bar No. 17827020
jason.schuette@dallascounty.org

Joseph W. Spence
Assistant District Attorney
Texas State Bar No. 18913500
joseph.spence@dallascounty.org

Barbara S. Nicholas
Assistant District Attorney
Texas State Bar No. 24032785
barbara.nicholas@dallascounty.org

Civil Division
Dallas County Records Building
500 Main Street, Suite 6300
Dallas, Texas 75202
Telephone:    214.653.7358
Telecopier:   214.653.6134

ATTORNEYS FOR THE DEFENDANT
DALLAS COUNTY, TEXAS

## CERTIFICATE OF SERVICE

On 30 April 2024, I filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas.  I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*s/ Jason G. Schuette*
Assistant District Attorney

25